UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN O'NEIL,

                                    Plaintiff,

                                                              3:17-CV-640
v.                                                            (DNH/TWD)

ARGON MEDICAL DEVICES, INC.,
REX MEDICAL, L.P.,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

MARC J. BERN & PARTNERS LLP          DEBRA J. HUMPHREY, ESQ.
Counsel for Plaintiff
60 East 42nd Street, Suite 950
New York, New York 10165

SEGAL, MCCAMBRIDGE, SINGER &          HOWARD A. FRIED, ESQ.
MAHONEY, LTD.
Counsel for Defendants
850 Third Avenue
Suite 1100
New York, New York 10022

LEWIS BRISBOIS BISGAARD & SMITH, LLP     WALTER H. SWAYZE, ESQ.
Counsel for Defendants                   MEGAN E. GROSSMAN, ESQ.
550 East Swedesford Road
Suite 270
Wayne, Pennsylvania 19087


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **REPORT RECOMMENDATION**

        Kevin O'Neil ("Plaintiff") commenced this products liability action in May 2017,

asserting he sustained injuries from an implanted medical device Argon Medical Devices, Inc.

("Argon") and Rex Medical, L.P. ("Rex") (collectively, "Defendants") designed, manufactured,

and distributed.  (*See generally* Dkt. No. 1-2.[1])  On June 22, 2017, Defendants moved to dismiss Plaintiff's complaint.  (Dkt. No. 7.)  The District Court denied Defendants' motion on March 22, 2018.  (Dkt. No. 25.)  Plaintiff subsequently filed a motion to amend the complaint.  (Dkt. Nos. 38, 39.)  This Court granted Plaintiff's motion to amend and Plaintiff filed an amended complaint on April 8, 2019.  (Dkt. Nos. 43, 44, 47.)  Plaintiff's amended complaint contains the following claims: (1) negligence; (2) strict products liability for defective design; (3) strict products liability for manufacturing defect; (4) strict products liability for failure to warn; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) breach of the implied warranty of fitness; (8) fraudulent misrepresentation; and (9) negligent misrepresentation.  (Dkt. No. 47.)  Plaintiff seeks both compensatory and punitive damages.  *Id.* at 41.[2]

Currently before the court is Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's amended complaint.  (Dkt. No. 50.)  In brief, Defendants argue Plaintiff did not sufficiently plead a defect in the device at issue or its warnings, an injury resulting from use of the device, and fraudulent or negligent misrepresentation.  (Dkt. No. 50-1.)  Furthermore, they contend Plaintiff's strict products liability claims fail as a matter of law under Comment k of Section 402A of the Restatement (Second) of Torts.  *Id.* at 14-16.  Defendants also moved to dismiss Plaintiff's request for punitive damages.  *Id.* at 23-26.  Finally, Defendants moved, pursuant to Rule 12(f) of the

---

[1]  Plaintiff filed the lawsuit in New York State Supreme Court, Broome County, and Defendants removed the action to federal court based on diversity jurisdiction.  (Dkt. No. 1-1.)

[2]  Citations to documents on the docket are to the pages the Court's CM/ECF electronic filing system automatically assigns.  Paragraph references are used where the referenced document contains consecutively numbered paragraphs throughout.

Federal Rules of Civil Procedure, to strike Plaintiff's "fraud-on-the-FDA allegations" and certain language relating to punitive damages. *Id*. at 22-26. Plaintiff opposed the motion and Defendants submitted a reply. (Dkt. Nos. 53, 54.) The Honorable David N. Hurd, United States District Judge, referred this motion to the undersigned for a report recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

For the reasons that follow, the Court recommends Defendants' motion be granted in part and denied in part.

## I.    FACTUAL BACKGROUND [3]

### A.    IVC Filters

The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower extremities. (Dkt. No. 47 at ¶ 17.) In some individuals, blood clots travel from vessels in the legs and pelvis through the IVC and into the lungs. *Id.* at ¶ 18. Blood clots which develop in the deep leg veins are called "deep vein thrombosis" ("DVT"). *Id.* at ¶ 19. Blood clots which reach the lungs are called "pulmonary emboli" ("PE") and can present health risks, including death. *Id.* at ¶ 20. While individuals at risk of clotting are often treated with anticoagulants, doctors may recommend implantation of an IVC filter to trap and filter clots in individuals at high risk of PE or DVT or for whom anticoagulants are contraindicated. *Id.* at ¶¶ 21-24. IVC filters can be implanted either permanently or temporarily. *Id.* at ¶ 25. Argon and Rex "design, research, develop, manufacture, test, market, advertise, promote, distribute, and/or sell IVC filters that are marketed and sold as both a temporary/retrievable or permanent device." *Id.* at ¶ 31.

---

[3] The following facts are derived from the amended complaint and are accepted as true for the purposes of deciding the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Rex designed the Option Retrievable Inferior Vena Cava Filter ("Option Filter"), which is made of a nickel titanium alloy and utilizes a conical shape design to capture blood clots. *Id.* at ¶¶ 32, 34. In June 2009, Defendants obtained clearance from the U.S. Food and Drug Administration ("FDA") to market the Option Filter under Section 510(k) of the Medical Device Amendments as a permanent filter, with the option for removal. *Id.* at ¶ 45. Manufacturers may receive clearance under Section 510(k) without formal review for a device that is deemed "substantially equivalent" to a pre-existing medical device. *Id.* at ¶¶ 36-38, 45-47.

Rex conducted an internal study of the Option Filter between June 2007 and August 2010 with 100 subjects and an average implantation period of 67 days. *Id.* at ¶¶ 50-51. In 88% of subjects, removal of the Option Filter was achieved without complication. *Id.* at ¶ 52. Of all surgical attempts at removal, 92% were successful; the device could not be removed from the remaining 8% of subjects due to migration or complications. *Id.* at ¶ 54.

### B.    FDA Warnings and MAUDE Reports

In August 2010, the FDA issued a warning advising against leaving IVC filters implanted in patients for extended periods due to the potential for complications. *Id.* at ¶ 39. The FDA published studies regarding the risks of leaving IVC filters intended for short-term placement implanted in patients and advised doctors to remove IVC filters once the risk for PE subsides. *Id.* at ¶¶ 40-41. The FDA issued a second warning in 2014, advising doctors to remove retrievable IVC filters "within one to two months of implant once the danger for a pulmonary embolism had passed." *Id.* at ¶ 44. Despite these warnings, Defendants continued to market the Option Filter as appropriate for both temporary and permanent use. *Id.* at ¶ 57.

The FDA also maintains an active database of Manufacturer and User Facility Device Experience ("MAUDE") data, which includes reports of adverse events involving medical

devices. *Id.* at ¶ 62. Several MAUDE reports document "incidences of malfunction" of the Option Filter. *See id.* at ¶¶ 63-67. The most common malfunctions reported include irretrievability, device fracturing, embedment of the device, and tilting of the device. *Id.* at ¶ 67. Generally, the amended complaint alleges Defendants "failed to identify or acknowledge these device failures or determine their causes" and "failed to take timely and adequate remedial measures to correct known design and manufacturing defects" in the Option Filter. *Id.* at ¶ 73.

### C.    Facts Specific to Plaintiff

On December 12, 2011, Plaintiff was hospitalized for treatment of intracranial bleeds after undergoing knee surgery. *Id.* at ¶ 74. Plaintiff was unable to coagulate and Dr. Julie Miller deemed it medically necessary to intervene surgically. *Id.* ¶ 75. On December 13, 2011, Dr. Mark J. Brennan implanted Defendants' Option Filter in Plaintiff. *Id.* at ¶¶ 76-78. The Option Filter was "implanted and utilized in accordance with Defendants' specific instructions, guidelines, and directives." *Id.* at ¶ 79. Plaintiff was not considered for removal of the filter within the FDA-recommended period for removal. *Id.* at ¶ 80.

On November 23, 2015, Plaintiff inquired about the Option Filter remaining in his body and cited stomach pain possibly attributable to the device having migrated. *Id.* at ¶ 81. Dr. Brennan informed Plaintiff retrieval of the device would be "difficult, if not impossible" after almost four years of implantation. *Id.* at ¶ 82. On January 27, 2017, Plaintiff obtained a second opinion from Dr. Kwame Amankawh, who informed Plaintiff the Option Filter was too deeply rooted in the IVC and could not be removed. *Id.* at ¶¶ 83-84. To date, the Option Filter remains in Plaintiff's body. *Id.* at ¶ 85. Having the device permanently inside his body exposes Plaintiff to risk of "death, migration, thrombosis, blockage," and other side effects. *Id.* at ¶¶ 87-88.

Plaintiff also reports suffering the "mental anguish and psychological trauma of living" with the Option Filter irretrievably in his body. *Id.* at ¶ 89.

Given these factual allegations, Plaintiff's amended complaint contains the following claims: (1) negligence; (2) strict products liability for defective design; (3) strict products liability for manufacturing defect; (4) strict products liability for failure to warn; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) breach of the implied warranty of fitness; (8) fraudulent misrepresentation; and (9) negligent misrepresentation. (Dkt. No. 47.) Plaintiff seeks both compensatory and punitive damages. *Id.* at 41.

## II.    DISCUSSION

### A.    Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears there are not "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). In other words, a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.    Analysis

#### 1.    *General Standards and Background Issues*

Under New York law, "a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability, including contract (express or implied), negligence, or strict products liability." *Parillo v. Stryker Corp.*, No. 15-CV-155 (BKS/RFT), 2015 WL 12748006, at *2 (N.D.N.Y. Sept. 29, 2015) (citation and internal quotation marks omitted) (noting further there can be "a high degree of overlap" between these causes of action).

As an initial matter, Defendants argue Plaintiff's negligence, strict products liability, and breach of warranty claims must be dismissed for failure to sufficiently plead an injury. (Dkt. No. 50-1 at 13-14.) Defendants argue the alleged embedment and permanent implantation of the Option Filter does not constitute a sufficient injury. *Id.* While the continued implantation of the

Option Filter may expose Plaintiff to increased risk of future complications, a "threat of future harm is insufficient to impose liability against a defendant in a tort context." *Perez v. B. Braun Med., Inc.*, No. 17 Civ. 8512 (LLS), 2018 WL 2316334, at *3 (S.D.N.Y. May 9, 2018) (citation omitted). However, Plaintiff has alleged physical injury in the form of "stomach pain" possibly "attributable to a migrated device." (Dkt. No. 47 at ¶ 81.) At this juncture, construing the amended complaint liberally and raising all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has plausibly alleged an injury.

Defendants also rely on three district court cases decided after the District Court's Order denying their original motion to dismiss which dismissed with prejudice complaints "contain[ing] similar claims and causes of action" as Plaintiff's amended complaint. (Dkt. No. 50-1 at 10-11 (first citing *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 887 (E.D.N.Y. 2018); then citing *Quintana v. B. Braun Med. Inc.*, No. 17-cv-06614 (ALC), 2018 WL 3559091 (S.D.N.Y. July 24, 2018); and then citing *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500 (S.D.N.Y. 2018)).) Defendants contend the similarities between Plaintiff's case and *Oden*, *Quintana*, and *Tears* mean Plaintiff's amended complaint likewise should be dismissed. While the cases are in some respects similar, there are certain distinctions that warrant a difference in the Court's recommendations on some of Plaintiff's claims. For example, the filters in those cases were designed as permanent filters, *Oden*, 330 F. Supp. 3d at 884 n.1; *Quintana*, 2018 WL 3559091, at *1; *Tears*, 344 F. Supp. 3d at 507, whereas the FDA approved Defendants' Option Filter as a permanent filter with the option for retrieval. (Dkt. No. 47 at ¶ 45.) Therefore, though these cases provide persuasive authority, they are not dispositive on the issues related to this motion.

### 2.    *Negligence and Strict Liability Claims*

To state a claim for negligence, a complaint must allege (1) the defendant owed the plaintiff "a duty, or obligation, recognized by law," (2) breach of that duty, (3) a "reasonably close causal connection" between the defendant's conduct and the plaintiff's injury, and (4) loss or damage resulting from the breach. *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997).

In New York, a plaintiff can raise three types of strict products liability claims: "(1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *Id.* at 154-55 (citations omitted).

Under New York law, claims premised on design defect or manufacturing defect sounding in either negligence or strict liability are "functionally equivalent" and may be analyzed together. *See, e.g.*, *Tears*, 344 F. Supp. 3d at 509 & n.2; *Parillo*, 2015 WL 12748006, at *5 n.8. It also is "well-settled that where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent." *Oden*, 330 F. Supp. 3d at 887 (quoting *Estrada v. Berkel Inc.*, 789 N.Y.S.2d 172, 173 (App. Div. 2005) (internal quotation marks and brackets omitted)). Thus, the Court analyzes Plaintiff's negligence and strict products liability claims concurrently.

Initially, Defendants argue Plaintiff's strict products liability claims fail as a matter of law under Comment k of Section 402A of the Restatement (Second) of Torts. (Dkt. No. 50-1 at 14-15.) Comment k provides manufacturers with an exception to strict liability for "[u]navoidably unsafe products." Restatement (Second) of Torts § 402A cmt. k. While New

York courts have adopted Comment k and applied the exception to prescription drugs, they have

not extended the exception to all medical devices.  *Williamson v. Stryker Corp.*, No. 12 Civ.

7083 (CM), 2013 WL 3833081, at *7 (S.D.N.Y. July 23, 2013) (discussing precedent and noting

recent cases declining to extend the Comment k exception to medical devices).  However, the

Court need not determine whether the Option Filter is an "unavoidably unsafe product."  The

exception from strict liability for such products applies only where the product is "properly

prepared."  Restatement (Second) of Torts § 402A cmt. k; *see also Williamson*, 2013 WL

3833081, at *8 ("The comment k defense is unavailable for products negligently manufactured,

negligently distributed or unaccompanied by proper warnings." (citing *Martin v. Hacker*, 628

N.E.2d 1308, 1311 (N.Y. 1993)).  Because, as discussed below, the Court finds Plaintiff has

adequately stated a claim premised on defective design and manufacturing defect, Comment k

does not bar such claims even if the Option Filter were considered an unavoidably unsafe

product.

### a.    Defective Design

A defectively designed product is "one which, at the time it leaves the seller's hands, is in

a condition not reasonably contemplated by the ultimate consumer and is unreasonably

dangerous for its intended use."  *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 403

N.E.2d 440, 443 (N.Y. 1980); *McCarthy*, 119 F.3d at 155.  To state a claim based on a design

defect, a plaintiff must allege (1) "the product, as designed, posed a substantial likelihood of

harm;" (2) it was feasible to design the product in a safer manner; and (3) the defective design

was a "substantial factor" in causing the plaintiff's injury.  *Maxwell v. Howmedica Osteonics

Corp.*, 713 F. Supp. 2d 84, 90 (N.D.N.Y. 2010); *see also Voss v. Black & Decker Mfg. Co.*, 450

N.E.2d 204, 207-09 (N.Y. 1983).

The Court finds Plaintiff has adequately alleged facts which, if proved, would support a claim based on defective design. The amended complaint alleges the Option Filter "was defective and not reasonably safe due to [its] improper, inadequate, and defective design." (Dkt. 47-1 at ¶ 104.) Plaintiff also asserts the Option Filter was sold in a "defective condition . . . making the product unreasonably dangerous." *Id.* at ¶¶ 108, 110. More specifically, Plaintiff alleges the Option Filter as designed was "unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*." *Id.* at ¶ 61. Plaintiff also alleges the Option Filter is "designed in such a way that when exposed to expected and reasonably foreseeable in-vivo conditions, the filter[] will . . . migrate, perforate internal organs and vasculature, fracture, and lead to the formation of thromboembolism and PE." *Id.* at ¶ 60. Moreover, the Court draws the reasonable inference that the manufacturing process used to make the Option Filter results in "surface blemishes" and could have been improved by using "electropolishing." *Id.* at ¶¶ 116-17. Furthermore, Plaintiff alleges "alternative designs of the Option Filter's hooks and struts could lead to ease of removal after extended periods of implantation." *Id.* at ¶ 118.

At this early juncture, the Court finds Plaintiff has adequately alleged a defect in the design of the Option Filter as well as a feasible alternative design. While courts sometime require a plaintiff to identify a "particular problem in the design of a product," *see Guariglia v. Procter & Gamble Co.*, No. 2:15-cv-04307 (ADS) (SIL), 2018 WL 1335356, at *3 (E.D.N.Y. Mar. 14, 2018), this requires a plaintiff to "possess technical or scientific knowledge about the inner workings of the product, which would contravene the notice pleading requirement of [Rule 8], even under the *Iqbal-Twombly* standard," *Parillo*, 2015 WL 12748006, at *3. Accordingly, the Court recommends denying Defendants' motion to dismiss Plaintiff's negligence and strict liability claims premised on defective design.

### b.    Manufacturing Defect

To state a claim of manufacturing defect, a plaintiff must allege (1) the product was defective due to "an error in the manufacturing process" and (2) this defect was the proximate cause of the plaintiff's injury. *Rosen v. St. Jude Med., Inc.*, 41 F. Supp. 3d 170, 182 (N.D.N.Y. 2014); *see also Williamson*, 2013 WL 3833081, at *4. "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (citing *Perazone v. Sears, Roebuck & Co.*, 515 N.Y.S.2d 908, 911 (App. Div. 1987)). A plaintiff may state a manufacturing defect claim by relying on the circumstances of the accident "if the product did not perform as intended and the possibility of other causes has been excluded." *Richards v. Johnson & Johnson, Inc.*, No. 5:17-cv-00178 (BKS/ATB), 2018 WL 2976002, at *5 (N.D.N.Y. June 12, 2018) (citing *Williamson*, 2013 WL 3833081, at *5).

The Court finds Plaintiff has adequately alleged facts which, if proved, would support a claim based on manufacturing defect. The amended complaint alleges the Option Filter implanted in Plaintiff contained one or more conditions "which Defendant[s] did not intend" and that it was manufactured "with a defective condition." (Dkt. 47 at ¶¶ 126-27.) Construed liberally, Plaintiff thus alleges the specific Option Filter implanted in him "deviate[d] in quality" from other units. *See Colon*, 199 F. Supp. 2d at 85. Plaintiff also alleges the "manufacturing defect" resulted in a "malfunction" of the Option Filter after implantation, leading to irretrievability. (Dkt. No. 47 at ¶¶ 129, 137.) Plaintiff has thus adequately alleged the causation prong of a manufacturing defect claim.

Defendants are incorrect that, to state a successful manufacturing defect claim, a plaintiff must show the product was defective due to "some mishap in the manufacturing process itself,

improper workmanship, or because defective materials were used in construction." (Dkt. No. 50-1 at 16 (citing *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 283 (E.D.N.Y. 2009).) Courts have recognized this standard comes from *Colon*, 199 F. Supp. 2d 53, which involved a motion for summary judgment rather than a motion to dismiss. *See, e.g.*, *Williamson*, 2013 WL 3833081, at *4. Moreover, this standard would require plaintiffs to possess technical or specialized knowledge regarding the product. *Id.*; *see also Parillo*, 2015 WL 12748006, at *5 n.9.

Furthermore, a plaintiff may state a claim for manufacturing defect by relying on the circumstances of the accident "if the product did not perform as intended and the possibility of other causes has been excluded." *Williamson*, 2013 WL 3833081, at *5. Here, Plaintiff alleges his healthcare providers "used and administered the Option Filter for the purpose intended by Defendants, and in a manner normally intended to be used and administered," but nonetheless its normal use caused him injury. (Dkt. No. 47 at ¶ 130.) Accordingly, the Court recommends denying Defendants' motion to dismiss Plaintiff's negligence and strict liability claims premised on manufacturing defect.

### c.     Failure to Warn

Finally, stating a claim based on failure to warn requires a plaintiff to allege (1) the manufacturer had a duty to warn; (2) the plaintiff used the product in a reasonably foreseeable manner; and (3) the failure to warn was the cause of the plaintiff's injury. *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 413 (N.D.N.Y. 2012); *see also Rosen*, 41 F. Supp. 3d at 183. A manufacturer has a duty to warn when it knows or should know of "latent dangers resulting from intended or reasonably foreseeable unintended uses of the product." *Monell*, 895 F. Supp. 2d at 413. Under New York law, a manufacturer may satisfy its duty to warn by providing the

necessary information to the physician and need not provide it directly to the patient.  *Black v. Covidien, PLC*, No. 17-CV-6085-FPG, 2018 WL 573569, at *3 (W.D.N.Y. Jan. 26, 2018).  A failure to warn claim is properly dismissed "if a plaintiff does not plead facts indicating how the provided warnings were inadequate."  *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012).

The Court finds Plaintiff has not adequately alleged facts to state a claim for failure to warn under either a strict products liability or negligence theory.  The amended complaint alleges defendants "had a duty to warn of the risks" associated with use of the Option Filter but that the product had "inadequate warnings and instructions."  (Dkt. No. 47 at ¶¶ 145-46.)  The amended complaint generally alleges the "warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity" of "injuries to the consumer."  *Id.* at ¶ 152.[4]  Similarly, Plaintiff alleges the "warnings given" for post-implantation complications "failed to properly warn consumers of the risks and failure of removal after long term use [and] increased risks" of injury.  *Id.* at ¶ 163.

These conclusory allegations are insufficient.  Plaintiff does not provide any factual allegations regarding the content of the warnings which were in fact provided to him or his healthcare providers, nor does he explain *how* those warnings were inadequate.  *See Black*, 2018 WL 573569, at *3 (dismissing failure to warn claim where plaintiffs did not "identify what warnings [the d]efendant gave to [the] physicians [or] how they were inadequate"); *see also Reed*, 839 F. Supp. 2d at 575-77 (dismissing failure to warn claim where allegations did not

---

[4]  The Court acknowledges the allegation that "Defendants' brochure did not provide any warnings as to possible complications" associated with the Option Filter.  (Dkt. No. 47-1 at ¶ 161.)  However, the brochure is merely one avenue through which Defendants could have provided warnings, and the amended complaint elsewhere refers to "warnings given."  *E.g.*, *id.* at ¶¶ 152, 163.

include "any factual content" regarding what the purported inadequate warnings were). Without stating what warnings were in fact given to Plaintiff or his healthcare providers, the allegations that the warnings were inadequate or failed to properly warn of the risks are no more than legal conclusions. *See Reed*, 839 F. Supp. 2d at 576 ("[A]ssertions that warnings were not 'adequate' or 'sufficient' are nothing more than legal conclusions unsupported by factual content."); *see also Parillo*, 2015 WL 12748006, at *7 (noting plaintiffs do not require technical information to describe a product's warnings and opining that device failure does not support an inference of failure to warn). Accordingly, the Court recommends dismissing Plaintiff's failure to warn claim.

### 3.    *Breach of Warranty Claims*

#### a.    **Express Warranty**

To state a claim for breach of express warranty, a complaint must allege (1) a material statement amounting to a warranty, (2) the consumer's reliance on the warranty as a basis for the contract with the seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990)); N.Y.U.C.C. § 2-313 (defining express warranties). This requires a plaintiff to plead the "exact terms of the warranty" as well as the plaintiff's reliance on those terms as a basis for the bargain. *Hingos v. W.L. Gore & Assocs.*, No. 3:16-CV-969, 2017 WL 3309095, at *6 (N.D.N.Y. Jan. 27, 2017); *see also Teixeria v. St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 225 (W.D.N.Y. 2016) (noting a plaintiff must allege "where, when or how the alleged promise or statement was provided to [the plaintiff] or his physicians").

Plaintiff alleges Defendants "expressed in their literature, advertisements, and promotions and through representations by their marketing team and sales agents that Option Filters were safe, effective and fit for long term implantation." (Dkt. No. 47 at ¶ 183.) Plaintiff also alleges Defendants' brochures advertised the Option Filter as having a "100% technical and retrieval success." *Id.* at ¶ 184. Generally, Plaintiff alleges Defendants expressly warranted the Option Filter was safe and effective, Plaintiff relied on these warranties through his physicians and/or other healthcare providers, and members of the medical community relied on Defendants' representations and warranties. *Id.* at ¶¶ 187-91.

Initially, to the extent Plaintiff's claim for breach of express warranty seeks to reach any warranty in FDA-approved statements found in the Option Filter's labeling or advertising, federal law would preempt it. *Lake v. Kardjian*, 874 N.Y.S.2d 751, 754 (Sup. Ct. 2008) (noting "such a claim would impose requirements different from, or in addition to, the federal requirements"); *see also Horowitz*, 613 F. Supp. 2d at 285. Plaintiff's claim is not preempted to the extent it is based on "specific representations" which "exceed the scope of the FDA approved statements." *Lake*, 874 N.Y.S.2d at 754.

Here, Plaintiff has not alleged the terms of a specific express warranty or to whom it was made. *See Hingos*, 2017 WL 3309095, at *6 (dismissing claim for breach of express warranty where plaintiff failed to alleged "the exact terms of the warranty or where or to whom it was made); *Teixeira*, 193 F.3d at 225 (dismissing claim for breach of express warranty where plaintiff alleged representatives of defendants made "personal representations to [p]laintiff and/or his treating medical providers" that devices were safe because plaintiff did not plead any facts "regarding where, when, and how" the statements were made). To the extent the statement in Defendants' brochures that the Option Filter had a "100% technical and retrieval success"

rises to the level of an express warranty,[5] Plaintiff has inadequately alleged his reliance on the statement, either directly or through his healthcare providers, as a basis for the bargain. Plaintiff does not allege that either he or any of his healthcare providers actually received a copy of this brochure, much less that he specifically relied on its statement when deciding to implant the Option Filter. (*See* Dkt. No. 47 at ¶¶ 189-90.) Plaintiff, thus, has failed to plausibly allege reliance on a specific express warranty, either directly or indirectly through his healthcare providers. *See Oden*, 330 F. Supp. 3d at 895 (dismissing express warranty claim where complaint alleged reliance "without providing any underlying factual details concerning when, where and how such reliance arose"). Accordingly, the Court recommends dismissing Plaintiff's claim for breach of express warranty.

### b.      Implied Warranty of Merchantability

The implied warranty of merchantability focuses on the expectations of the consumer. *Castro v. QVC Network, Inc.*, 139 F.3d 114, 118 (2d Cir. 1998); *see also Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 (N.Y. 1995). The inquiry is whether the product was "fit for the ordinary purposes for which such goods are used." *Denny*, 662 N.E.2d at 736 (citing N.Y.U.C.C. § 2-314(2)(c)). To state a plausible claim for breach of the implied warranty of merchantability, therefore, a plaintiff must allege: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the [harm]." *Dalton v. Stedman Mach. Co.*, No. 05-CV-452, 2008 WL 351676, at *8 (N.D.N.Y. Feb. 7, 2008).[6]

---

[5] It is unclear from the amended complaint whether this statement was FDA-approved and thus whether a claim for breach of express warranty based on it is preempted.

[6] In New York, liability under a theory of implied warranty is "essentially the same" as under a theory of strict products liability, except a plaintiff is not required to demonstrate the feasibility

The Court finds Plaintiff has adequately alleged facts which, if proved, would support a claim based on breach of the implied warranty of merchantability. As noted, liability under a theory of implied warranty of merchantability is "essentially the same" as under a theory of strict products liability. *Dalton*, 2008 WL 351676, at *8; *Parillo*, 2015 WL 12748006, at *7 & n.10.

Here, Plaintiff alleges the Option Filter was "not of merchantable quality" when used in its "intended and/or reasonably foreseeable manner." (Dkt. No. 47 at ¶¶ 198-99.) Plaintiff alleges the Option Filter was not fit for its ordinary purpose because it was (1) "designed in such a manner so as to be prone to an increased risk rate of failure," (2) "designed in such a manner so as to result in an unreasonably high rate of injury," and (3) "manufactured in such a manner . . . so as to be prone to an unreasonably high rate of failure." *Id.* at ¶ 199. The amended complaint also alleges Defendants impliedly warranted the Option Filter to be merchantable and suitable for its ordinary purpose. *Id.* at ¶¶ 201. Plaintiff further asserts the Option Filter's defect caused his harm. *Id.* at ¶ 204. As discussed above in connection with Plaintiff's strict products liability claims, at this early juncture the Court finds Plaintiff has plausibly alleged facts from which to infer a defect in the Option Filter. Because Plaintiff's claim for breach of the implied warranty of merchantability is premised on the same defect, the Court accordingly recommends denying Defendants' motion to dismiss Plaintiff's claim for breach of the implied warranty of merchantability.

### c.    Implied Warranty of Fitness

An implied warranty of fitness arises when a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or

---

of alternative designs or the manufacturer's unreasonableness in marketing the product. *Id.* (citing *Denny*, 662 N.E.2d at 736).

judgment to select or furnish suitable goods." N.Y.U.C.C. § 2-315. The implied warranty of fitness thus "does not arise in every consumer sale." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986). To state a claim for breach of the implied warranty of fitness, a complaint must allege (1) the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods were required, (2) the buyer was justifiably relying on the seller's skill and judgment to select suitable goods, and (3) the buyer did in fact rely on the seller's skill. *Guariglia*, 2018 WL 1335356, at *8 (citing *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, No. 05-CV-837 (TJM), 2007 WL 1834599, at *9 (N.D.N.Y. June 26, 2007)). A "particular purpose" is different from the "ordinary purpose" of the goods. N.Y.U.C.C. § 2-315 (Official Comment) (noting a "particular purpose" "envisages a specific use by the buyer which is peculiar to the nature of his business").

The Court finds Plaintiff has not adequately alleged facts which, if proved, would state a claim for breach of the implied warranty of fitness for a particular purpose. Plaintiff alleges Defendants "knew of the intended use" of the Option Filter at the time of distribution to his healthcare providers. (Dkt. No. 47 at ¶ 207.) Plaintiff's amended complaint also asserts Defendants "impliedly warranted" the Option Filters were "fit for a particular purpose for which they were being used"—namely, "implantation into the IVC to treat DVT and the option of retrievability after use." *Id.* at ¶ 209. Plaintiff further alleges the Option Filters were not fit for this particular purpose. *Id.* at ¶ 210.

Plaintiff has not alleged, however, he required the Option Filter for a *particular* purpose, which is not necessarily the same as its *ordinary* purpose. *See Oden*, 330 F. Supp. 3d at 897; N.Y.U.C.C. § 2-315 (Official Comment) (distinguishing between "particular purpose" and "ordinary purpose"). Moreover, Plaintiff has not alleged Defendants knew or had reason to

19

know of any particular purpose for which he required the Option Filter which differed from the Option Filter's ordinary purpose.  *See Guariglia*, 2018 WL 1335356, at *8 ("Where a plaintiff fails to plead that a defendant knew of the particular purpose for which that plaintiff was buying a product, a complaint will be dismissed.").  Also fatal to Plaintiff's breach of the implied warranty of fitness claim is the absence of any allegation that Defendants knew he was justifiably relying on their skill and judgment or that he did in fact so rely on Defendants.  (*See* Dkt. No. 47 at ¶¶ 205-12.)  In fact, Plaintiff does not allege he interacted with Defendants in any way.  *See Tears*, 344 F. Supp. 3d at 513-14 (dismissing implied warranty of fitness claim where plaintiff did not allege any particular purpose or any interaction with defendant).  Accordingly, the Court recommends Plaintiff's breach of the implied warranty of fitness claim be dismissed.

### 4.    *Fraudulent and Negligent Misrepresentation Claims*

To state a claim of fraudulent misrepresentation, a complaint must allege (1) the defendant made a material false representation (2) by which the defendant intended to defraud the plaintiff, (3) the plaintiff reasonably relied on the representation, and (4) the plaintiff suffered harm as a result.  *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006); *see also Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011).  Such claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  The Second Circuit has held Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Nakahata*, 723 F.3d at 197-98 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

A claim of negligent misrepresentation requires a plaintiff to show (1) the defendant had a duty, because of a special relationship, to give correct information; (2) the defendant made a false representation that the defendant should have known was incorrect; (3) the defendant knew plaintiff desired the information presented; (4) the plaintiff intended to rely and act upon the information; and (5) the plaintiff reasonably relied on the representation to his or her detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *see also Williamson*, 2013 WL 3833081, at *11. A special relationship "may be established by persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (citation and internal quotation marks omitted). As with fraudulent misrepresentation, negligent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b). *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005) (per curiam); *Williamson*, 2013 WL 3833081, at *10.

As an initial matter, Defendants move pursuant to Rule 12(f) to strike all of Plaintiff's "fraud-on-the-FDA" allegations from the amended complaint. (Dkt. No. 50-1 at 22-23.) Defendants argue federal law preempts any allegations that Defendants "perpetrated a fraud" on the FDA when obtaining clearance to sell the Option Filter. (Dkt. No. 50-1 at 22-23 (referring to Dkt. No. 47 at ¶¶ 215, 232).) Generally, motions to strike are disfavored and rarely granted. *See Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[C]ourts should not

tamper with the pleadings unless there is a strong reason for so doing.").  To prevail on a Rule

12(f) motion to strike, the movant must demonstrate "(1) no evidence in support of the

allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and

(3) permitting the allegations to stand would result in prejudice to the movant."  *Lynch*, 278

F.R.D. at 63.  Defendants have not made this showing and the Court recommends denying the

motion to strike any fraud-on-the-FDA allegations.[7]

The Court finds Plaintiff has not adequately alleged facts to state a claim of fraudulent

misrepresentation under the heightened pleading standard of Rule 9(b).  In the amended

complaint, Plaintiff alleges Defendants "misrepresented and omitted material information

regarding [the Option Filter] by failing to disclose the known risks."  (Dkt. No. 47 at ¶ 214.)

Plaintiff also alleges the Option Filter was advertised "in Defendants' materials to have a '100%

technical and retrieval success.'"  *Id.* at ¶ 216.  Furthermore, the amended complaint states Dr.

Brennan "relied on" information he received from Defendants and that Defendants made false

representations "with the intent to mislead" the medical community.  *Id.* at ¶¶ 221, 225.  These

general allegations are insufficient under Rule 9(b).  The only statement Plaintiff identifies as

allegedly fraudulent is the statement that the Option Filter has a "100% technical and retrieval

success."  *Id.* at ¶ 216.  However, Plaintiff does not identify the speaker, state where and when

the statement was made, or explain why the statement was fraudulent.  *See Nakahata*, 723 F.3d

at 197-98; *see also Richards*, 2018 WL 2976002, at *7-8 (dismissing fraudulent

misrepresentation claim where the complaint did not specify who made the statements at issue

---

[7]  Nevertheless, to the extent Plaintiff asserts any fraud-on-the-FDA claims, or to the extent
Plaintiff's fraudulent and negligent misrepresentation claims are premised on interactions
between Defendants and the FDA, those claims are preempted by federal law.  *Buckman Co. v.
Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001).

but only referred collectively to "Defendants").[8]  The amended complaint also is devoid of facts to support the bare assertion of the legal elements that Defendants acted with the intent to defraud and mislead and that Plaintiff's healthcare providers reasonably relied on the misrepresentations.  (Dkt. No. 47 at ¶¶ 221, 225, 228.)

For similar reasons, Plaintiff also has failed to adequately allege a claim of negligent misrepresentation under Rule 9(b).  Plaintiff's allegations in support of his negligent misrepresentation claim are virtually identical to those supporting his fraudulent misrepresentation claim.  *Compare id.* at ¶¶ 213-29 (fraudulent misrepresentation), *with id.* at ¶¶ 230-46 (negligent misrepresentation).  As with his fraudulent misrepresentation claim, the only statement Plaintiff identifies as a potentially negligent misrepresentation is the statement that the Option Filter has a "100% technical and retrieval success."  *Id.* at ¶ 233.  However, Plaintiff's allegations fail to identify the speaker or state where and when the statement was made.  *See Nakahata*, 723 F.3d at 197-98.   Furthermore, Plaintiff fails to allege Defendants had a duty to give correct information due to a special relationship between the parties, a necessary element of a negligent misrepresentation claim.  *See Hydro Investors*, 227 F.3d at 20.  At most, Plaintiff and the Defendants engaged in an "ordinary arm's-length commercial transaction," which does not by itself give rise to a special relationship.  *See Alley Sports Bar, LCC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 294-95 (W.D.N.Y. 2014) (dismissing negligent misrepresentation claim where parties engaged in an "ordinary business transaction"); *see also*

---

[8]  While the amended complaint alleges Plaintiff's healthcare providers "relayed Defendants' representations" regarding the Option Filter's retrievability to him "[s]ix months after implantation," Dkt. No. 47 at ¶¶ 218-20, what is relevant to Plaintiff's claim is when *Defendants* made the representation.

*Tears*, 344 F. Supp. 3d at 515-16 (dismissing negligent misrepresentation claim where complaint did not allege facts to support an inference of a special relationship).

Accordingly, the Court recommends dismissing Plaintiff's fraudulent misrepresentation and negligent misrepresentation claims.

### C.    Punitive Damages

Under New York law, it is well-settled that punitive damages are a remedy and not an independent cause of action. *Mahar v. U.S. Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 111 (N.D.N.Y. 2010) (quoting *Rose Lee Mfg., Inc. v. Chem. Bank*, 588 N.Y.S.2d 408, 410 (App. Div. 1992)). In New York, a plaintiff may recover punitive damages for tortious conduct which involves "gross, wanton, or willful fraud or other morally culpable conduct." *Cohen v. Davis*, 926 F. Supp. 399, 405 (S.D.N.Y. 1996) (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 509 (2d Cir. 1991)). Moreover, whether or not to award punitive damages is a fact-intensive inquiry not necessarily appropriate on a motion to dismiss. *See, e.g.*, *id.* (citing *Palmer v. County of Suffolk*, 464 N.Y.S.2d 1019, 1019 (App. Div. 1983)) (holding the question of whether the plaintiff was entitled to punitive damages was "a factual issue" that could not be determined on a motion to dismiss); *Racich v. Celotex Corp.*, 887 F.2d 393, 397 (2d Cir. 1989) (observing the "decision to award punitive damages and their amount are questions which primarily reside in the jury's discretion").

Here, Plaintiff has alleged, for example, Defendants continued to manufacture and market the Option Filter despite knowledge of the risks posed to consumers and that their conduct was "intentional, wanton, willful and outrageous beyond all standards of common decency." (Dkt. No. 47 at ¶¶ 96, 100.) Because the Court finds Plaintiff has plausibly alleged claims premised on negligence, defective design, and manufacturing defect, as discussed above, he has sufficiently alleged facts which could possibly support an award of punitive damages. *See Richards*, 2018

WL 2976002, at *10 (denying motion to dismiss request for punitive damage because the complaint's allegations of the product's being "unreasonably dangerous" also sufficiently alleged moral culpability to survive dismissal); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Accordingly, the Court recommends Defendants' motion to dismiss Plaintiff's request for punitive damages be denied to the extent that request relates to his remaining claims.

### D.    Leave to Replead

Finally, Plaintiff requests leave to amend the complaint in the event the Court dismisses all or part of the amended complaint.  (Dkt. No. 53 at 10.)  While leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the decision whether to permit amendment is "within the sound discretion of the district court," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  A court need not give leave to replead where the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014) (affirming denial of request to further amend the complaint where plaintiff "entirely failed to specify how it could cure its pleading deficiencies"); *Oden*, 330 F. Supp. 3d at 903-04 (collecting cases); *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402-03 (2d Cir. 2009) ("[W]e have not required district courts to provide detailed explanations when denying cursory or boilerplate requests for [leave to amend], made solely in a memorandum in opposition to a motion to dismiss.").

Here, Plaintiff's opposition to Defendants' motion merely requests leave to further amend the complaint without giving the Court any indication of how he would cure the deficiencies in the amended complaint.  (Dkt. No. 53 at 10.)  Instead, Plaintiff simply asserts "[t]he issues here are far too complex to suggest that the denial of leave to amend under these circumstances would be either fair or appropriate."  *Id.*  Because Plaintiff gives no indication of how he would cure the

amended complaint's deficiencies, the Court denies the request to further amend the complaint at this time.  *See TechnoMarine*, 758 F.3d at 505-06.

## III.    CONCLUSION

For the reasons set forth above, the Court recommends Defendants' motion to dismiss (Dkt. No. 50) be granted in part and denied in part.  If the District Court accepts this Report Recommendation, the claims remaining in this action will be Plaintiff's claims for negligence, defective design, manufacturing defect, and breach of the implied warranty of merchantability.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 50) be **GRANTED** with respect to Plaintiff's claims for failure to warn, breach of express warranty, breach of the implied warranty of fitness for a particular purpose, fraudulent misrepresentation, and negligent misrepresentation, with prejudice; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 50) be **DENIED** with respect to Plaintiff's claims for negligence, defective design, manufacturing defect, and breach of the implied warranty of merchantability and request for punitive damages; and it is further

**RECOMMENDED** that Defendant's Rule 12(f) motion to strike (Dkt. No. 50) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.


Dated: February 13, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge